# APPENDIX A

**[Attached]**

# ADJUDICATING SECURITIES LAW VIOLATIONS IN THE AGE OF LIMITED BANKRUPTCY COURT JURISDICTION

RYAN D. ZICK AND JEFF TCHAKAROV[*]

TABLE OF CONTENTS

Introduction .................................................................................................. 293
I. Jafari and the Narrow View ................................................................. 295
II. The Expanded View is Not at Odds with § 523(a)(19)'s Legislative History ................................................................................................... 300
III. Policy Reasons for Sarbanes-Oxley Bolster Application of the Expanded View ...................................................................................................... 301
Conclusion .................................................................................................... 303

## INTRODUCTION

Section 523(a) of the Bankruptcy Code,[1] entitled "Exceptions to Discharge," contains a list of various types of debt that are either nondischargeable as a matter of law or may be held nondischargeable if the creditor to whom the debt is owed takes timely action to object to its discharge.[2] Included in these types of debt are obligations arising from securities law violations.[3] Specifically, § 523(a)(19) excepts from discharge a debt that:

>  (A) is for—
>  (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

---

[*] Ryan D. Zick is an associate litigation attorney with Price, Postel & Parma LLP in Santa Barbara, CA. Mr. Zick served as a judicial law clerk to the Hon. Peter H. Carroll, United States Bankruptcy Judge in the Central District of California. Jeff Tchakarov is an associate litigation attorney with Zieve, Brodnax & Steele, LLP in Irvine, CA. Mr. Tchakarov has served as a judicial law clerk to the Hon. Peter H. Carroll and Hon. Julia Brand, United States Bankruptcy Judges in the Central District of California.

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–330 (2012).

[2] *See* 11 U.S.C. § 523(a) (2012) (listing in subsections (1) and (2) the types of debt that are nondischargeable as a matter of law, while listing in subsection (3) the types of debt that may be held nondischargeable if the creditor to whom the debt is owed takes timely action to object).

[3] The elements to establish a prima facie case for a federal securities law violation are: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005) (citations omitted) (emphasis in original).

Case 24-00051-TOM    Doc 41-1    Filed 01/16/26    Entered 01/16/26 14:43:20    Desc
Appendix A    Page 2 of 12

    (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) results, before, on, or after the date on which the petition was filed, from—
    (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
    (ii) any settlement agreement entered into by the debtor; or
    (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.[4]

  Section 523(a)(19) was added to the Bankruptcy Code by § 803(3) of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley").[5] The Senate Report on the draft legislation indicates that Sarbanes-Oxley was enacted to address perceived loopholes in securities laws after the Enron debacle,[6] and "to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible."[7] Prior to the enactment of § 523(a)(19), wrongdoers could "discharge their obligations under court judgments or settlements based on securities fraud and other securities violations."[8]

  As originally drafted, § 523(a)(19)(B) did not include the phrase "before, on, or after the date on which the petition was filed" and thus required a pre-petition determination of liability for a violation of securities laws before the bankruptcy court could determine dischargeability.[9] Therefore, unless a judgment or settlement was already entered against the debtor prior to the bankruptcy filing, § 523(a)(19) was inapplicable. This resulted in debtors filing bankruptcy just prior to the entry of a judgment to discharge debts for securities law violations.[10] Congress addressed this issue with the passage of the Bankruptcy Abuse Prevention Consumer Protection Act ("BAPCPA") of 2005, which amended § 523(a)(19)(B) by inserting the phrase "before, on, or after the date on which the petition was filed" and thereby

---

[4] 11 U.S.C. § 523(a)(19)(A)–(B).
[5] *See* Sarbanes-Oxley Act of 2002, Pub. L. No. 107–204, § 803(3), 116 Stat. 745, 801 (2002).
[6] *See* S. Rep. No. 107–146, at 2 (2002) (discussing Enron and the purpose of the Sarbanes-Oxley Act). Throughout the 1990s, Enron sold natural gas, electricity, and communications products to a variety of customers. On October 16, 2001, Enron announced a shocking $618 million loss for the quarter, a figure attributable to the company's decision to reduce falsely inflated income and report concealed losses from earlier accounting periods. On November 8, 2001, Enron revealed that its accounting practices violated a number of laws and industry norms and that audit reports for 1997–2000 were inaccurate. When its share price fell precipitously, Enron declared bankruptcy and many of its senior officers were indicted for securities fraud. *See* Newby v. Enron Corp., 394 F.3d 296, 299 (5th Cir. 2004).
[7] 148 Cong. Rec. S7418 (daily ed. July 26, 2002) (statement of Sen. Leahy).
[8] 148 Cong. Rec. S1787 (daily ed. March 12, 2002) (statement of Sen. Leahy).
[9] *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1404(a), 119 Stat. 23, 215 (2005) (showing the amendment to the original language).
[10] *See In re* Pierce, 563 B.R. 698, 705 (Bankr. C.D. Ill. 2017) (explaining the purpose of the temporal language added to § 523(a)(19)(B)).

eliminating the temporal limitation on establishing liability for a securities law violation.[11]

Bankruptcy courts are divided over the issue of whether § 523(a)(19) empowers them to adjudicate liability for debts arising from securities law violations.[12] This issue has not been addressed by any circuit court.[13] While the practical effect of BAPCPA's amendment to § 523(a)(19) was to eliminate the need for a pre-petition judgment or settlement, it also triggered a debate as to whether bankruptcy courts now have jurisdiction to determine liability for securities law violations or whether the liability determination must still be made in a non-bankruptcy forum.[14]

## I. JAFARI AND THE NARROW VIEW

The seminal case advocating for the narrow view is *In re Jafari*,[15] a decision out of the Bankruptcy Court in the District of Colorado. In *Jafari*, creditors brought an adversary proceeding to except debt from discharge under § 523(a)(19) in a chapter 7 case of a debtor who had served as their financial advisor.[16] The creditors argued that due to BAPCPA's changes to § 523(a)(19), the bankruptcy court could make a determination of both the debtor's liability for securities fraud and the dischargeability of the resulting debt.[17] Based on an analysis of § 523(a)(19)'s language and legislative history, the *Jafari* court concluded that the creditors could not prevail on their § 523(a)(19) claim "without first obtaining a written determination of liability from another tribunal."[18] Several bankruptcy courts across different circuits have subscribed to the narrow view articulated in *Jafari*.[19]

Other courts have embraced a more expanded reading of § 523(a)(19), holding "that the bankruptcy court can determine the liability, damages, and dischargeability of the debt for securities violations" under § 523(a)(19).[20] The Court in *In re Hill*—

---

[11] *See* Pub. L. No. 109-8, § 1404(a).

[12] *See infra* notes 15–28 and accompanying text. *Compare In re* Jafari, 401 B.R. 494, 495 (Bankr. D. Colo. 2009) (holding that plaintiffs cannot establish a nondischargeability claim under 11 U.S.C § 523(a)(19) without first obtaining a written determination of liability from another tribunal), *with In re* Hill, 495 B.R. 646, 661 (Bankr. D.N.J. 2013) (holding that, consistent with Sarbanes-Oxley and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the bankruptcy court has jurisdiction to determine whether the debt at issue resulted from a securities violation).

[13] *See infra* Conclusion.

[14] *See infra* sections I and II and accompanying text.

[15] *See In re* Jafari, 401 B.R. at 499–500 (finding § 523(a)(19) expressly fashions liability determinations outside the jurisdiction of bankruptcy courts).

[16] *See id.* at 494.

[17] *See id.* at 496.

[18] *Id.* at 495.

[19] *See In re* Bundy, 468 B.R. 916, 919–21 (Bankr. E.D. Wash. 2012); *see also In re* Collier, 497 B.R. 877, 902–03 (Bankr. E.D. Ark. 2013); *In re* Minardi, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015); *In re* Zimmerman, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006); *In re* Robben, 562 B.R. 469, 477–78 (Bankr. D. Kan. 2017); *In re* Miller, No. 08-34558 HCD, 2010 WL 8970668, at *4 (Bankr. N.D. Ind. Aug. 26, 2010).

[20] *In re* Sato, 512 B.R. 241, 251 (Bankr. C.D. Cal. 2014); *see also* One Longhorn Land I, L.P. v. Presley, 529 B.R. 755, 762 (C.D. Cal. 2015) (stating that the court was adopting the broader view to conclude withdrawal was not mandatory); *In re* Chui, 538 B.R. 793, 807 (Bankr. N.D. Cal. 2015) (discussing the

a decision out of the Bankruptcy Court in the District of New Jersey—is the leading case advocating for the expanded view.[21] In *Hill*, the debtor was a licensed investment advisor associated with the sale of securities.[22] Prior to bankruptcy, the Bureau of Securities of the State of New Jersey issued an order finding the debtor liable for securities law violations.[23] The debtor was also sued in federal district court for securities fraud.[24] Before judgment was entered in the district court case, the debtor filed bankruptcy.[25]

The plaintiff in the district court case filed an adversary proceeding in the bankruptcy case seeking a nondischargeability determination pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(6), (a)(13), and (a)(19).[26] When the plaintiff filed a summary judgment motion on the § 523(a)(19) cause of action, the *Hill* court was required to determine whether it had jurisdiction to adjudicate liability for the underlying securities law violation.[27] After evaluating the decision in *Jafari* and looking at the plain text of the statute in the context of other § 523 subsections, the *Hill* court found that determination of liability for securities law violations under § 523(a)(19) is squarely within the jurisdictional purview of bankruptcy courts.[28]

It is well-settled that construing a statute starts with the language of the statute itself.[29] If the language is unclear, then courts may turn to traditional tools of statutory interpretation to ascertain Congress's intentions, including legislative history and policy rationales.[30] Courts should give each word its ordinary meaning

---

reasoning of the court in *In re* Hill); Tradex Glob. Master Fund SPC Ltd. v. Chui, 559 B.R. 520, 526 (Bankr. N.D. Cal. 2016) (determining that the requirements of § 523(a)(19) were not satisfied); *In re* Jensen-Ames, No. 10-14185, 2011 BL 94556, at *9 (Bankr. W.D. Wash. March 29, 2011) (explaining that § 532(a)(19) intended to expand the rights of victims of securities fraud); *In re* Jansma, No. 09 BK 07071, 2010 BL 14425, at *5 (Bankr. N.D. Ill. Jan. 21, 2010) (expressing the court's approval for the expanded interpretation of § 523(a)(19)); *In re* Chan, 355 B.R. 494, 505 (Bankr. E.D. Penn. 2006) (concluding that "it is perfectly appropriate for . . . the bankruptcy court . . . to make a dischargeability determination under § 523(a)(19)"); *In re* Civiello, 348 B.R. 459, 463 (Bankr. N.D. Ohio 2006) (discussing the legislative history and purpose of § 523(a)(19)).

[21] *See In re* Hill, 495 B.R. 646, 656, 660–61 (Bankr. D.N.J. 2013) (explaining the expanding view of the court's role under § 523(a)(19)).

[22] *Id.* at 649.

[23] *See id.* at 646, 649–50 (holding that Hill engaged in dishonest or unethical practices, employed a scheme to defraud a client, caused false records to be created and submitted to authorities, and made untrue statements of material fact or omitted material fact in the sale of securities).

[24] *See id.* at 650 (the federal lawsuit was stayed once bankruptcy proceedings were initiated, which led to an adversary proceeding seeking a determination).

[25] *See id.* (Hill filed a chapter 7 Bankruptcy petition on December 20, 2010).

[26] *See id.* (noting only the counts under § 523(a)(19) remained at issue, due to the plaintiff's waiver of trial, and reliance on a limited motion for summary judgment).

[27] *See id.* at 650–51 ("Does the Bankruptcy Code provision excepting from discharge a chapter 7 debtor's debts for securities law violations, 11 U.S.C. § 523(a)(19), deny the bankruptcy court authority to enter the *initial* substantive judgement for those violations . . . ?").

[28] *See id.* at 655–60. "Consistent with Sarbanes-Oxley and BAPCPA, this court has the jurisdiction and authority to enter the 'resulting' judgement (§ 523(a)(19)(B)(i)) for securities law violations (§ 523 (a)(19)(A)), in a wide array of adversary proceedings to except debts from discharge." *Id.* at 661.

[29] *See* Randall v. Loftsgaarden, 478 U.S. 647, 656 (1986) (citation omitted).

[30] *See* Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 861–65 (1984) (examining legislative history and policy rationales whenever the language of the statute is unclear).

Case 24-00051-TOM   Doc 41-1   Filed 01/16/26   Entered 01/16/26 14:43:20   Desc
Appendix A    Page 5 of 12

unless the statute or the context requires otherwise.[31] The United States Supreme Court has instructed that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[32]

Section 523(a)(19)(B) by its terms, excepts from discharge debts that are based on securities law violations that result "before, on, or after the date on which the petition was filed" from "any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding."[33] Advocates of the expanded view rightfully contend that the phrase "any Federal or State judicial administrative proceeding" should be interpreted as permitting a bankruptcy court to determine liability for securities law violations.[34] This view is in line with the plain text of the statute. After all, it cannot be logically disputed that proceedings before a bankruptcy court are "Federal judicial proceedings."

Adhering to the principle that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme,"[35] proponents of the narrow view find ambiguousness in the post-BAPCPA language of § 523(a)(19)(B) by comparing it with other provisions of § 523(a).[36] The *Jafari* court observed that when subsections of § 523(a) do not require a judgment or order (i.e., a liability determination), bankruptcy courts are free to establish liability in connection with nondischargeability determinations, subject only to jurisdictional limitations and preclusion doctrines.[37] For example, § 523(a)(2)(A) renders nondischargeable debts arising from fraud; however, this subsection "contains no requirement of a judgment, order, decree or settlement agreement finding that fraud has occurred" and "[i]f no prior determination has been made, the bankruptcy court itself may hear and determine liability for fraud."[38] Ergo, the *Jafari* court concluded that if the language of § 523(a)(19) contained no requirement for a memorialized judicial or administrative order or settlement agreement, "it would have paralleled th[e] language of § 523(a)(2)(A) and clearly the bankruptcy court would have been able to determine liability if it were not bound by a prior determination."[39]

---

[31] *See* United States v. Neal, 776 F.3d 645, 652 (9th Cir. 2015) (interpreting statutory terms in accordance with their meaning, unless the statute expresses an intention to the contrary).

[32] Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (citation omitted).

[33] 11 U.S.C. § 523(a)(19)(B) (2012).

[34] *See In re* Sato 512 B.R. 241, 251–52 (Bankr. C.D. Cal. 2014) (listing cases in support of the contention that the "expanded view holds that the bankruptcy court can determine the liability, damages, and dischargeability of the debt for securities violations and securities fraud and issue its own judgment to satisfy § 523(a)(19)(B)").

[35] Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (citations omitted) (explaining that a court must interpret a statute in a "harmonious" way, noting that a statute may be affected by other Acts, "particularly where Congress has spoken subsequently and more specifically to the topic at hand").

[36] *See infra* notes 59–62 and accompanying text (referencing the ambiguities of § 523(a)(19)(B) and its legislative history).

[37] *See In re* Jafari, 401 B.R. 494, 497–98 (Bankr. D. Colo. 2009).

[38] *See id.* at 497.

[39] *Id.* at 498.

Case 24-00051-TOM    Doc 41-1    Filed 01/16/26    Entered 01/16/26 14:43:20    Desc
Appendix A    Page 6 of 12

Conversely, when a subsection of § 523(a) does require a memorialized liability determination, "the bankruptcy court does not litigate the underlying claim, but only whether such a claim has already been established" in a non-bankruptcy forum and satisfies any other requirements found within § 523(a).[40] For example, § 523(a)(7) renders nondischargeable a debt for a "fine, penalty, or forfeiture" payable to a governmental unit.[41] Section 523(a)(11) states that a debt is nondischargeable if it results from a "final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State" as to a claim for fraud by a fiduciary with respect to a depository institution.[42] Section 523(a)(13) states that a debt is nondischargeable if it is based on an "order of restitution issued under title 18, United States Code."[43] All of the aforementioned subsections of § 523(a) require that the underlying liability be determined by a tribunal other than the bankruptcy court.[44] Thus, by analogy with said subsections, the *Jafari* court concluded that "[o]ne of the required elements for a finding of nondischargeability under [§ 523(a)(19)] is that the *liability* determination has been made outside of the bankruptcy court."[45] A converse interpretation, the court added, "would essentially read [§ 523(a)(19)(B)] out of the statute."[46]

A closer look at the comparisons of § 523(a)(19) to other subsections of § 523(a) does not reveal Congress's intent to exclude bankruptcy courts from "any Federal judicial proceeding." For example, § 523(a)(11) requires a final pre-petition judgment in order for the underlying debt to be nondischargeable.[47] Pre-BAPCPA, § 523(a)(19) contained the same temporal limitation as § 523(a)(11).[48] However, as the *Hill* court noted, Congress amended § 523(a)(19) to remove the temporal limitation to include, as nondischargeable, all judgments from securities law violations resulting "before, on, or after the date on which the petition was filed."[49] At the same time, Congress made no change to § 523(a)(11).[50] When discerning the intent of Congress in the language of a statute, there is a "strong presumption that Congress has expressed its intent in the language it chose."[51] If Congress wanted to

---

[40] *See id.* at 498–99.
[41] 11 U.S.C. § 523(a)(7) (2012) (noting the fine cannot be "compensation for actual pecuniary loss").
[42] *Id.* § 523(a)(11).
[43] *Id.* § 523(a)(13) (referencing title 18 of the United States Code dealing with federal crimes and criminal procedure).
[44] *See In re* Jafari, 401 B.R. at 498–99.
[45] *Id.* at 499.
[46] *Id.*; *see also In re* Bundy, 468 B.R. 916, 921 (Bankr. E.D. Wash. 2012) ("[I]nterpreting § 523(a)(19) to allow a bankruptcy court to decide whether the requirements of § 523(a)(19)(A) have been met would render § 523(a)(19)(B) meaningless.").
[47] *In re* Jafari, 401 B.R. at 498.
[48] *Id.* at 496.
[49] *See In re* Hill, 495 B.R. 646, 654 n.4, 657 (Bankr. D.N.J. 2013) (explaining how § 523 was amended to extend the "reach" of the Sarbanes-Oxley Act).
[50] *Compare* 11 U.S.C. § 523(a)(11) (2000), *with* 11 U.S.C. § 523(a)(11) (2006).
[51] *See* Immigration & Naturalization Servs. v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987) (stating if there is plain language in the statute, then legislative history is used to determine only whether congressional intent is clearly expressed and contrary to the language in the statute).

prevent bankruptcy courts from determining liability for securities law violations, Congress would have included such a limitation in the statute.

Section 523(a)(13) is also distinguishable from § 523(a)(19) because the former states that a debt is nondischargeable if it is based on an "order of restitution issued under title 18, United States Code."[52] A bankruptcy court has no authority to order restitution under title 18 — the main criminal code of the federal government of the United States.[53] On the other hand, bankruptcy courts routinely determine liability for civil fraud.[54] Debts covered by § 523(a)(19) are more akin to civil fraud than to restitution for criminal offences under § 523(a)(13).[55]

Courts must "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting prior legislation."[56] "[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'"[57] Based on these canons of statutory interpretation, it can be presumed that when Congress amended § 523(a)(19) in 2005, it was aware of the statute's pre-BAPCPA judicial interpretation requiring a liability determination by a non-bankruptcy forum, yet chose, for whatever reason, not to alter § 523(a)(19)(B)'s references to the required decree (or judgment or order) or elaborate on which courts are allowed to enter such a decree. Instead, the BAPCPA amendment addressed only the timing of such a decree. On these grounds, several courts have sided with *Jafari's* proposition that § 523(a)(19)(B) "evidences a conscious choice to have *the liability determination* occur outside of the bankruptcy forum, whether it occurs pre- or post-bankruptcy."[58]

The narrow view's presumption regarding Congress' intent is misguided. *Jafari* and its progeny of cases ignore the fact that prior to 2005, bankruptcy courts could not determine liability for securities law violations solely because of the temporal limitation contained in the pre-BAPCPA language of § 523(a)(19)(B). By

---

[52] 11 U.S.C. § 523(a)(13) (2012); *see also Cardoza-Fonseca*, 480 U.S. at 431 ("With regard to this very statutory scheme, we have considered ourselves bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used.") (internal quotation marks omitted).

[53] *See* United States v. Hensley, 91 F.3d 274, 276 (1st Cir. 1996) ("Federal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute.").

[54] *See, e.g., In re* Hill, 495 B.R. at 658.

[55] *See* 11 U.S.C. § 523(a)(13), (a)(19); Gray v. First Winthrop Corp., 776 F. Supp. 504, 512 (N.D. Cal. 1991). A claim for common law fraud requires a plaintiff "to prove that the defendant made a false representation, with knowledge of its falsity, intending to induce reliance thereon, and that the plaintiff actually and reasonably relied on the representation, thereby suffering damages." *Id.* The only ostensible difference between common law fraud and securities law fraud is that the latter requires the representation to be connected to the purchase or sale of securities.

[56] Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1072 (9th Cir. 2002) (citation omitted); *see also* United States v. Male Juvenile, 280 F.3d 1008, 1016 (9th Cir. 2002) (citing Cannon v. Univ. of Chi., 441 U.S. 677, 696–704 (1979)).

[57] Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006) (quoting Bragdon v. Abbott, 524 U.S. 624, 645 (1998)).

[58] *In re* Jafari, 401 B.R. at 499–500 (Bankr. D. Colo. 2009); *accord In re* Collier, 497 B.R. 877, 903 (Bankr. E.D. Ark. 2013), *In re* Anderson, No. 10-20651-TLM, 2012 WL 3133827, at *4 (Bankr. D. Idaho Aug. 1, 2012).

removing the only roadblock preventing bankruptcy courts from adjudicating securities law violations, Congress unambiguously demonstrated a conscious choice to turn the statute's pre-BAPCPA judicial interpretation on its head. Although Congress did not alter § 523(a)(19)(B)'s references to the required decree (or judgment or order) or to the courts allowed to enter such a decree, repetition of these same references in the new statute cannot indicate an intent to incorporate previous judicial interpretations which had been based on a different part of the statute, namely the removed temporal limitation. As a result, the express and plain language of § 523(a)(19)(B) can now only be read one way: "Federal judicial proceedings" include bankruptcy court proceedings.

## II. THE EXPANDED VIEW IS NOT AT ODDS WITH § 523(A)(19)'S LEGISLATIVE HISTORY

If the language of the statute is ambiguous or capable of more than one reasonable interpretation, courts "consult the legislative history, to the extent that it is of value, to aid in [their] interpretation."[59] The statutory language of § 523(a)(19)(B) is unambiguous and thus it would be inappropriate to consult legislative history. Even if courts find that the language of § 523(a)(19)(B) is ambiguous, the legislative history is of no avail.

Courts adhering to the narrow view believe that the legislative history of § 523(a)(19) shows that "the primary purpose of the statute was to ensure that judgments and settlements from *state* securities fraud cases are nondischargeable without the need to re-litigate in bankruptcy court."[60] As noted in Senator Patrick Leahy's statement during the introduction of § 523(a)(19) in 2002, "[b]y ensuring securities law judgments and settlements in *state* cases are non-dischargeable, precious *state* enforcement resources will be preserved and directed at preventing fraud in the first place."[61] Against a backdrop of such legislative history, combined with the well-settled principle that § 523(a)(19), as originally enacted, prevented bankruptcy courts from establishing liability for a violation of securities laws, it appears that BAPCPA's temporal amendment to § 523(a)(19)(B) changed nothing more than the time frame within which a liability determination can be made by a non-bankruptcy forum, while leaving the language describing such forum intact.[62]

Nevertheless, the narrow view proponents fail to point out that legislative history is largely unhelpful in this case. It is undisputed that BAPCPA is replete with legislative history, providing useful insight into the intent of Congress. However, this is not the case with § 523(a)(19). The only legislative history

---

[59] United States v. Thompson, 728 F.3d 1011, 1015 (9th Cir. 2013) (citation omitted).

[60] *In re* Collier, 497 B.R. at 903 (emphasis added); *see also In re* Minardi, 536 B.R. 171, 191 (Bankr. E.D. Tex. 2015).

[61] 148 Cong. Rec. S7419 (daily ed. July 26, 2002) (statement of Sen. Leahy) (emphasis added).

[62] *See In re* Bundy, 468 B.R. 916, 918, 921 (Bankr. E.D. Wash. 2012) ("[The language of the amendment] changes the time period in which the determination is made, but does not change the conclusion of whether a bankruptcy court has the authority to make the determination.").

pertaining to § 523(a)(19) stems from the passage of Sarbanes-Oxley[63] and not from BAPCPA's subsequent amendment of § 523(a)(19)(B)[64]—the operative subsection at the heart of the judicial split. In the absence of guidance from Congress, courts adopting the narrow view supplant the plain text of the statute with what the narrow view proponents *believe* Congress intended.[65] This is contrary to elementary rules of statutory interpretation. Courts should not assume the role of the legislature by deviating from the plain words in the statute. The Supreme Court has warned against this form of judicial activism.[66]

"To give statutory language other than its plain meaning, a court must find that a literal meaning of the statute would actively frustrate the purpose of Congress as revealed in unambiguous legislative history."[67] There is no unambiguous legislative history that warrants a deviation from the plain text of § 523(a)(19)(B). Therefore, the phrase "any Federal or State judicial administrative proceeding" should more appropriately be interpreted to authorize bankruptcy courts to determine liability for securities law violations under § 523(a)(19).

### III. POLICY REASONS FOR SARBANES-OXLEY BOLSTER APPLICATION OF THE EXPANDED VIEW

When statutory language is ambiguous and congressional intent cannot be divined from legislative history, "[courts] may also consider the consequences of a particular interpretation, including its impact on public policy."[68] "It remains a fundamental canon of statutory construction that 'the unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.'"[69] Under this criterion, adopting the expanded view is practical and promotes judicial economy. As briefly discussed in *Hill*, nondischargeability complaints are usually filed with multiple causes of action.[70] Many times, a § 523(a)(2) cause of action for fraud is filed concurrently with other claims under § 523(a) subsections.[71] If a debtor committed fraud with respect to a securities

---

[63] *See supra* notes 6 and 49.
[64] *See In re* Bundy, 468 B.R. at 918–19 ("The legislative history of this amendment provides no guidance in resolving the narrow issue posed . . . .").
[65] *See id.* at 919 n.4 (stating that Congress adopted the amendments to § 523(a)(19) "to ensure that prior determinations of administrative agencies or default judgments would be given preclusive effect in dischargeability actions").
[66] *See* Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) (citing Crooks v. Harrelson, 282 U.S. 55, 60 (1930) (stating it is the legislature's duty to remedy objectionable laws, not the court's)).
[67] *In re* Karben, 201 B.R. 681, 684 (Bankr. S.D.N.Y. 1996) (citation omitted).
[68] Edgerly v. City & Cty. of S.F., 713 F.3d 976, 983 (9th Cir. 2013) (citation omitted).
[69] United States v. Iron Mountain Mines, Inc., 812 F. Supp. 1528, 1558 (E.D. Cal. 1992) (citation omitted).
[70] *See In re* Hill, 495 B.R. 646, 659–60 n.19, 660 (Bankr. D.N.J. 2013) (discussing the burden placed on courts when an order is deemed to be preclusive, and the bankruptcy court's jurisdiction is more limited in applying § 523(a)(19)).
[71] *See id.* at 659–60 n.19 ("Adversary proceedings or other securities law actions are likely to include: (i) multiple substantive securities law-based causes . . . ; (ii) a number of different grounds for exception to

Case 24-00051-TOM    Doc 41-1    Filed 01/16/26    Entered 01/16/26 14:43:20    Desc Appendix A    Page 10 of 12

transaction, it is likely that he or she committed fraud within the meaning of § 523(a)(2) as well.[72]

Under the narrow view, if there is no pre-petition judgment or settlement for the securities law violation, the bankruptcy court would adjudicate the § 523(a)(2) claim but not the § 523(a)(19) claim.[73] This would require the plaintiff to seek relief from stay, and then file a complaint in another court of competent jurisdiction to obtain a determination of liability for the securities law violation. All the while, the bankruptcy court is left with a choice: either hold the § 523(a)(2) claim in abeyance, pending a resolution of the securities law claim or adjudicate the § 523(a)(2) claim, while the other court does the same with the securities law claim. This is not a good use of judicial resources. Both the § 523(a)(2) and § 523(a)(19) claims by their nature involve a material misrepresentation or omission (i.e., fraud). The only distinction is that § 523(a)(19) involves fraud with respect to the purchase or sale of a security. This minute difference should not strip the bankruptcy court of jurisdiction to determine liability for securities law violations under § 523(a)(19).

Taking the narrow view's position to a logical extreme raises another concern. Consider the following factual scenario: A chapter 7 trustee is administering estate assets and comes across a potential cause of action on behalf of the estate for a securities law violation against a third party. During the administration of this asset, the trustee settles the claim with the third party. The trustee and the third party enter into a settlement, whereby the third party pays a sum certain to the trustee in satisfaction of the securities law violation. Under the bankruptcy rules, this settlement would be approved by order of the bankruptcy court. Thereafter, the third party files bankruptcy. Is the bankruptcy court's settlement nondischargeable under § 523(a)(19) in the subsequently filed third party's bankruptcy case? Is the original bankruptcy proceeding "any Federal or State judicial or administrative proceeding"? If the answer to these questions is yes, why wouldn't the bankruptcy court be able to determine liability in an originally filed § 523(a)(19) cause of action? If the answer to these questions is no, that directly contradicts Sarbanes-Oxley's express purpose of preventing plaintiffs from having to "plow the same ground twice in securities fraud cases."[74] It is highly unlikely that Congress intended to create such a jurisdictional quagmire.

---

bankruptcy discharge (e.g., § 523(a)(2)(A) common law fraud, (a)(4) embezzlement or defalcation by a fiduciary, (a)(6) willful and malicious injury to property); and (iii) multiple parties, crossclaims and third-party actions . . . .").

[72] *See id.* at 660 (questioning the challenges a bankruptcy court with limited jurisdiction may face in adjudicating exceptions to discharge claims for common law fraud (§ 523 (a)(2)) and fraud or defalcation of a fiduciary (§ 523 (a)(4)), claims which are often coupled).

[73] *See In re* Jafari, 401 B.R. 494, 496–98 (Bankr. D. Colo. 2009) ("[T]he debt must be memorialized in a judicial or administrative order or settlement agreement. . . . If Plaintiffs cannot establish both requirements, their claim will fail.").

[74] S. REP. NO. 107-146, at 10 (2002).

Case 24-00051-TOM    Doc 41-1    Filed 01/16/26    Entered 01/16/26 14:43:20    Desc Appendix A    Page 11 of 12

CONCLUSION

Bankruptcy courts are courts of limited jurisdiction. "Like all federal courts, the jurisdiction of the bankruptcy courts is created and limited by statute."[75] However, the fact that their jurisdiction is limited does not mean that bankruptcy courts should shy away from adjudicating matters that are squarely within their purview. Although good arguments have been made on both sides of the debate, ultimately, adoption of the expanded view follows the plain text of § 523(a)(19). Even if courts find the statutory text ambiguous, the legislative history and policy concerns tip the scales in favor of the expanded view. Surprisingly, the issue has never been decided on a circuit level despite the growing split in authority among lower bankruptcy courts since the introduction of BAPCPA in 2005. It is time that an appellate court weigh in and settle this dispute.

Copyright 2018 American Bankruptcy Institute. For reprints, contact www.copyright.com.

---

[75] *See* Wilshire Courtyard v. California Franchise Tax Bd. (*In re* Wilshire Courtyard), 729 F.3d 1279, 1284–85 (9th Cir. 2013) (citing Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995)).